UNITED STATES DISTRICT COURT
IN THE DISTRICT OF CONNECTICUT

RALPH C. NECLERIO, Jr.

-vs-

TRANS UNION, L.L.C.,

Case No. 11 CV 1317 VLB
Hon.

Defendants

## COMPLAINT & JURY DEMAND

*Ralph C. Neclerio, Jr. states the following claims for relief:*

### Parties and Venue

1. The Plaintiff to this suit is Mr. Ralph C. Neclerio, Jr. who resides and is a citizen of the State of Connecticut.

2. Ralph Neclario is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq* ("FCRA") at §1681a(c).

3. The Defendants to this action is Trans Union, L.L.C. ("**Trans Union**") is a consumer reporting agency as contemplated by the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*.

4. Trans Union sells consumer reports in the State of Connecticut, gathers information concerning citizens of the State of Connecticut, and acquires consumer credit data originating in the state of Connecticut. Consequently, Trans Union maintains relationships to conduct systematic business operations in the state of Connecticut.

5. The transactions and occurrences that underlie this suit occurred in Connecticut.

1

6.   This Court is the proper venue for this case.

## Background and Prior Litigation

7.   This case arises as a result of the continued refusal of Trans Union to resolve the persistent appearance of credit data concerning Mr. Neclerio's father – also named Ralph Neclerio – on Mr. Neclerio's consumer reports.

8.   The credit reporting industry recognizes this phenomenon – the continued mixing of data attributable to two different people on the reports of either person – as a common problem known as "mis-merged" files or "mixed" files.

9.   "Mis-merged" or "mixed" files arise as a result of flaws in the algorithms used by consumer reporting agencies to match credit data with individuals who already exist within that consumer reporting agency's database of consumers.

10.   Trans Union itself defended and ultimately resolved an enforcement action brought by the Texas attorney general concerning the "mixed" or "mis-merged" file problem.

11.   As a result of that law suit (ND IL Case No 92-C-7101) Trans Union agreed to a consent order (Exhibit A).

12.   In that consent order, Trans Union agreed to "1. Implement or continue to utilize and maintain reasonable procedures to avoid the occurrence or reoccurrence of Mixed Files."

13.   Trans Union itself has been sued by consumers and suffered judgments as a result of mixing consumer files.

14.   Trans Union itself has been sued by consumers and paid significant sums in settlement of claims involving mixed consumer files.

15. The Federal Trade Commission has documented this problem in its December 2004 report to Congress under the 2003 amendments to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* commonly known as the Fair and Accurate Credit Transactions Act of 2003 ("FACTA").

16. In spite this documented history of problems with mixed files, Trans Union continues to experience numerous disputes concerning "mixed" files or "mis-merged" files.

17. Against this backdrop, Mr. Neclerio brings this case as part of the most recent episode in a 20-year battle with Trans Union to remove false credit data attributable to his father from his Trans Union consumer report.

18. In the mid 1980's Mr. Neclerio became aware that the credit file maintained by Trans Union concerning Mr. Neclerio also contained information concerning his father (also named Ralph Neclerio).

19. Mr. Neclerio repeatedly disputed that information as he became aware of it and notified Trans Union – sometimes through its affiliate the Credit Bureau of Connecticut, Inc. – that it had put information attributable to his father on Mr. Neclerio's consumer reports.

20. Mr. Neclerio asked that Trans Union and its affiliates they remove information belonging to his father from his consumer report.

21. Trans Union and its affiliates removed the information, only to include information concerning Mr. Neclereio's father in later reports.

22. Throughout the ensuing 20 years, Mr. Neclerio has suffered the repeated reappearance of information concerning his father on his consumer reports when he sought credit or employment.

23. Mr. Neclerio has brought two prior actions concerning this problem.

24. Mr. Neclerio brought the first of those actions in March of 1999 against Trans Union's affiliate The Credit Bureau of Connecticut, Inc. in New Haven Superior Court, Case No CV 98-0416672.

25. Mr. Neclario brought the second case in this Court in 2002, Case No. 302 –CV– 2098.

26. Following the resolution of that law suit, and in spite of repeated requests to Trans Union and its affiliates to cease including information concerning his father on reports that Trans Union assembled, Trans Union subsequently failed to keep Mr. Neclerio's consumer report free of derogatory information concerning his father.

27. Within the preceding two years, Trans Union has assembled consumer reports concerning Mr. Neclerio that also contain derogatory data concerning Mr. Neclerio's father.

28. Most recently, when Mr. Neclerio's attorney disputed information concerning Mr. Neclerio's father with Trans Union in January 2010, Trans Union responded that ". . . we have researched the activity surrounding your claim; however we have found no evidence that any of the information contained in your client's credit report (derogatory or otherwise) does not belong to your client."

29. Consequently, Trans Union refused to correct the false information.

30. Mr. Neclerio has suffered damages as a result of this continued reappearance of information concerning his father on his own consumer report.

31. Trans Union's merging and matching algorithms have caused his file to be "mixed" with that of his father.

32. Mr. Neclerio's difficulties in resolving problems with the mixing of his file have been

compounded by Trans Union's refusal to make full and complete disclosure of the information which it draws upon to assemble reports relating to Mr. Neclerio.

33. Specifically, when Trans Union assembles consumer reports for its subscribers, it allows these subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of data in the report, which may sometimes include data attributable to persons other than the target consumer.

34. However, when consumers like Mr. Neclerio request copies of their consumer files, Trans Union requires a complete match of all personal identifiers, resulting in a narrower match of data to the target consumer.

35. Consequently, Trans Union's own procedures for disclosing information to consumers tends to mask or conceal problems with mixed files.

36. By concealing this information from consumers, Trans Union has impeded the ability of consumers like Mr. Neclerio to effectively dispute and correct errors in their consumer reports.

37. Trans Union has failed to follow reasonable procedure to insure the maximum possible accuracy of Mr. Neclerio's consumer report, in the face of repeated notice of problems with the content of the report.

38. Trans Union's actions in refusing to correct Mr. Neclerio's consumer report were willful.

### Factual Allegations Relative to The Trans Union Credit Report

39. Mr. Neclerio disputed that the inaccurate information with Trans Union and requested that Trans Union reinvestigate and correct the information as envisioned by 15 U.S.C. § 1681i.

40. Mr. Neclerio's request included sufficient information or documentation to provide actual notice that the credit information was inaccurate and the source of disputed information was not reliable.

41. Trans Union responded to this dispute from Mr. Neclerio by requesting verification of the credit information by the entities which had furnished the information to Trans Union; alternatively Trans Union failed to notify the entities which had furnished the disputed information to Trans Union.

42. Trans Union failed to transmit all relevant information to the entities which had furnished the disputed information to Trans Union.

43. Trans Union maintained the inaccurate credit information in Mr. Neclerio's consumer file as a result of the verification from the source of the disputed information and Trans Union's own failure to conduct a proper reinvestigation of the disputed information.

44. Trans Union has failed to follow reason procedures to assure the maximum possible accuracy of Mr. Neclerio's consumer report.

45. Upon information and belief Trans Union has failed to disclose the complete contents of his consumer file to him.

46. Mr. Neclerio has suffered damages as a result these actions by Trans Union.

### Count I – FCRA, 15 U.S.C. § 1681 *et seq.* (Trans Union)

47. Mr. Neclerio incorporates the preceding allegations by reference.

48. Trans Union has negligently violated 15 U.S.C. § 1681e and 15 U.S.C. § 1681o; alternatively Trans Union has willfully violated 15 U.S.C. § 1681e and 15 U.S.C. § 1681n.

49. Trans Union has negligently violated 15 U.S.C. § 1681g and 15 U.S.C. § 1681o; alternatively Trans Union has willfully violated 15 U.S.C. § 1681g and 15 U.S.C. § 1681n.

50. Trans Union has negligently violated the FCRA, 15 U.S.C. §§ 1681i and 1681o; alternatively Trans Union has willfully violated the FCRA, 15 U.S.C. §§ 1681i and 1681n.

51. Mr. Neclerio has suffered damages as a result of this violation of the FCRA

## Jury Demand

52. Mr. Neclerio demands trial by jury.

## Request For Relief

53. *ACCORDINGLY Mr. Neclerio requests that the Court Grant any or all of the following relief:*

   A.   *Actual damages.*

   B.   *Statutory damages in an amount to be determined at trial.*

   C.   *Punitive damages in an amount to be determined at trial.*

   D.   *Costs and attorney fees provided by statute.*

   E.   *Any other relief the Court deems just.*

Respectfully Submitted,

S/ Anthony Bonadies
Anthony Bonadies
THE BONADIES LAW FIRM, LLC
Attorney For Ralph Neclerio
1220 Whitney Ave.
PO Box 6118
Hamden, CT 06517
PHONE: (203) 288-1300 FAX: (203) 288-1302
anthony@bonadieslaw.com
Federal Bar # CT 02472

Dated: August 17, 2011