## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RALPH C. NECLERIO, JR.,          :
    PLAINTIFF,          :
              :        CIVIL ACTION NO.
    v.          :        3:11-CV-01317 (VLB)
              :
TRANS UNION, LLC          :
    DEFENDANT.          :        November 15, 2013

## MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION TO STRIKE  [Dkts. 44, 47 & 61]

## INTRODUCTION

Before the Court are cross motions for summary judgment: a motion for partial summary judgment filed by the Plaintiff, Ralph C. Neclerio, Jr. ("Neclerio, Jr."), seeking judgment on claims brought under 15 U.S.C. § 1681g and 15 U.S.C. § 1681i(a)(6)(B)(ii), and a motion for summary judgment as to all claims filed by Defendant, Trans Union, LLC ("Trans Union")[1].  The Plaintiff, Richard C. Neclerio, Jr., brought this suit alleging both negligent and willful noncompliance of sections 1681e(b), 1681i, and 1681g of the Fair Credit Reporting Act (the "FCRA"). For the reasons stated hereafter, Plaintiff's motion for partial summary judgment is denied, Defendant's motion for summary judgment is denied as to Plaintiff's section 1681e(b) claim only and granted as to Plaintiff's remaining claims, and

---

[1] The parties do not dispute that Trans Union is a "consumer reporting agency" as defined by the FCRA at 15 U.S.C. § 1681(a)(f).

Defendant's Motion to Strike Plaintiff's Supplemental Interrogatory Response is denied.

## I. FACTUAL BACKGROUND[2]

The following facts are undisputed unless otherwise noted.  Plaintiff applied for a job with Guilford Savings Bank ("Guilford") in 2009.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 42.]  As part of his application, Plaintiff submitted a resume and completed a form application that included a release allowing Guilford to conduct an employment background investigation.  *Id.*  At 12:56 PM on September 1, 2009, as part of that background investigation, Guilford requested a consumer report from Trans Union (the "12:56 Request").  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 43.]  In the 12:56 Request, Guilford provided Trans Union with only the name "Ralph Neclerio" and Plaintiff's then-current address, located on Lincoln Avenue in Wallingford, Connecticut (the Court will refer to Plaintiff's then-current address as the "Lincoln Avenue Address").  *Id.*  Guilford did not provide Trans Union with the suffix to Plaintiff's name, "Jr.," in the 12:56 Request.  *Id.*  The report returned by Trans Union in response to the 12:56 Request (the "12:56 Report") bore a name matching Plaintiff's, "Ralph C. Neclerio, Jr.", noted a current address located on Stonewall Drive in Hamden, Connecticut (the "Stonewall Drive Address"), and indicated that the Lincoln Avenue Address was the first previous address.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 44.]  Additionally, the 12:46 Report contained a date of birth and a Social Security Number, neither

---

[2] **The facts in this opinion are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties in support of the briefing on the motions, including deposition transcripts.**

of which were Plaintiff's.  *Id.*  Guilford noticed immediately that the Social Security Number on the report did not match the Social Security Number that Plaintiff had provided to Guilford, and shredded the report.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 45.]  Seven minutes later, at 1:03 PM, Guilford made a second report request to Trans Union (the "1:03 Request").  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 45.]

The exact content of the 12:56 Report are not in the record, as Guilford shredded it immediately after receiving it, [Dkt. 45, Def. 56(a)(1) Statement, ¶ 45.] and because Trans Union does not keep internal copies of reports that have been sent.  [Dkt. 57, Def. 56(a)(2) Statement, ¶ 6.][3]  However, it is undisputed that Trans Union's automated system generated a letter on September 3, 2009, which indicated that Trans Union had produced a credit report to Guilford, and which described six pieces of public record information that were contained in that report.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 49.]  That letter was addressed to "Ralph C. Neclerio, Jr.", and sent to Plaintiff's father's address, the Stonewall Avenue Address.[4]  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 49].

---

[3] **Defendant has submitted three different 56(a) statements in connection with the briefing on summary judgment, the first one in support of its motion for summary judgment, [Dkt. 45], the second one filed with Defendant's Opposition to Plaintiff's motion for partial summary judgment, [Dkt. 58], and the third filed with Defendant's reply in support of its motion for summary judgment, [Dkt. 65]. Although Plaintiff submitted a 56(a) statement in response to Defendant's first 56(a) statement, Plaintiff has not responded to Defendant's second or third 56(a) statements, and the Court sees nothing else in the record contradicting Defendant's assertion that it does not keep copies of reports sent to third parties, and thus the Court will take as controlling Defendant's assertion that it does not keep internal copies of reports that have been sent.**
[4] **In its Opposition to Plaintiff's motion for partial summary judgment, Defendant asserted that the Stonewall Drive Address was Plaintiff's father's address at the**

Seven minutes after its first request, at 1:03 PM, Guilford made a second report request to Trans Union (the "1:03 Request"). [Dkt. 45, Def. 56(a)(1) Statement, ¶ 45.] In making the 1:03 Request Guilford submitted the exact same name and address used in the 12:56 Request, but also included Plaintiff's Social Security Number. [Dkt. 45, Def. 56(a)(1) Statement, ¶ 46.] In response, Trans Union provided a second report (the "1:03 Report"). [Dkt. 45, Def. 56(a)(1) Statement, ¶ 47.] The 1:03 Report included Plaintiff's name and generational suffix, "Ralph C. Neclerio, Jr.," a current address that matched Plaintiff's then-address, the Lincoln Avenue Address, listed the Stonewall Drive Address as the first previous address,[5] listed Plaintiff's Social Security Number, and listed a date of birth matching Plaintiff's. [Dkt. 45, Def. 56(a)(1) Statement, ¶¶ 47; Dkt. 54, Ex. 8 at ¶ 3.][6] Although Plaintiff does not admit that the 1:03 Report was his own credit report, Plaintiff also does not allege that the 1:03 Report was not his own report or offer any evidence indicating that such report was not his own, and the evidence that is in the record indicates that it was in fact his own report. Although the 1:03 Report itself is not in the record, the record does contain an

---

time of the relevant events. [Dkt. 54 at 6.] Although Plaintiff did not file a reply to Defendant's Opposition, and has not otherwise addressed this assertion, Plaintiff has admitted that this was his father's address at least for part of 2007, at which time Plaintiff was living with his father. [Dkt. 45, Def. 56(a)(2) Statement, ¶ 50.] Therefore, the Court will assume for the purposes of this opinion that Plaintiff's father lived at the Stonewall Drive Address at all times relevant to this litigation.
[5] Plaintiff shared this address with his father for a period of time in 2007. [Dkt. 45, Def. 56(a)(1) Statement, ¶ 50.]
[6] Although neither party explicitly puts Plaintiff's date of birth into the record as an undisputed fact, Defendant's 56(a)(2) statement filed with its motion for summary judgment includes the results of snap shots of Plaintiff's credit file as it appeared in August, September, and October 2009. [Dkt. 45, Def. 56(a)(2) Statement, ¶¶ 70-72.] The date of birth shown in these snapshots match the date of birth undisputedly found on the 1:03 Report.

email to Plaintiff from an employee at Guilford stating that the 1:03 Report was Plaintiff's report.  [Dkt. 45, Ex. H at 000367.]  Because Plaintiff does not allege that the 1:03 Report was not his own report, and because the evidence in the record indicates that such report was in fact Plaintiff's own report, the Court will assume for the purposes of this decision that the 1:03 Report was Plaintiff's report.

On September 3, 2009, Trans Union sent an automatically-generated letter addressed to "Ralph C. Neclerio, Jr.", to the Stonewall Drive Address (the "September 3 Letter").  [Dkt. 45, Def. 56(a)(1) Statement, ¶¶ 49.]  The September 3 Letter stated that a credit report had been sent to Guilford as part of an employment background check, and further reported that six pieces of public record information had been included in the report sent to Guilford.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 49.]  These six pieces of public records information included a Chapter 7 Bankruptcy discharge, and five federal tax liens totaling approximately $86,000.  [Dkt. 54, Ex. 2.]  In declarations attached as exhibits to Plaintiff's opposition to Defendant's motion for summary judgment, Plaintiff states that he has never filed for bankruptcy nor been the subject of a tax lien; Plaintiff's father states that he has filed for bankruptcy, has accumulated several tax liens on his property, and that the public records items identified in the September 3 Letter are attributable to him.  [Dkt. 54, Ex. 8 at ¶¶ 6-7; Dkt. 54, Ex. 9 at ¶¶ 8-10.]

On September 9, 2009, Plaintiff emailed Guilford to inform them that information from his father's credit report may have appeared on the credit report Guilford received in response to its employment background check.  [Dkt. 45, Def.

56(a)(1) Statement, ¶¶ 51.]  In his email, Plaintiff wrote: "The public information described and contained in the report is inaccurate and not mine."  [Dkt. 45, Ex. H at 000367.] In a September 10, 2009 email response, Guilford informed Plaintiff that it had "recognized that the [12:56 Report] was not a match to you and resubmitted the report to Trans Union and received your correct report."  [Dkt. 45, Ex. H at 000367.]  Guilford explained that: "When we ran the credit report for you, we first received a report for a Ralph Neclerio Jr., however, the social security number on the report did not match your social security number."  [Dkt. 45, Ex. H at 000367.]  Guilford went on to say: "*Your* employment screening report from Trans Union came back absolutely fine and shows no issues that may impact your ability to be hired at Guilford Savings Bank."  [Dkt. 45, Ex. H at 000367 (emphasis in original).]  Guilford extended Plaintiff an offer of employment.  [Dkt. 45, Def. 56(a)(1) Statement, ¶¶ 52.]  There is no evidence in the record that Guilford read the erroneously issued credit report.

On January 8, 2010, Trans Union received a letter from Plaintiff's attorney Anthony Bonadies, in which Plaintiff informed Trans Union that he believed that Trans Union had "placed his father's poor credit history on his report," for which Plaintiff demanded damages from Trans Union, including attorney's fees.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 54; Dkt. 55, Ex. 11.]  In response, Trans Union personnel performed an investigation, although the quality of the investigation is disputed by the parties.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 55; Dkt. 56, Pl. 56(a)(2) Statement, ¶ 54.]  On January 10, 2010, Trans Union sent a letter to Plaintiff stating that Trans Union had performed an investigation and had concluded that

there was no information in Plaintiff's report that did not belong to Plaintiff.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 56; Dkt. 55, Ex. 11].  Trans Union attached a copy of Plaintiff's credit report,[7] to the letter, and informed Plaintiff that it would decline to pay any damages.  [Dkt. 45, Def. 56(a)(1) Statement, ¶¶ 57-58; Dkt. 50, Ex. 5.]  It appears that Trans Union was unaware that it had issued an erroneous credit report.

Trans Union received a second letter from Plaintiff's counsel on February 22, 2012, stating that Trans Union "provided six derogatory items that were attributed to Mr. Neclerio in error" without providing any detail on those six items. Although the letter indicated that it had an attachment [Dkt. 45, Def. 56(a)(1) Statement, ¶ 59; Dkt. 55, Ex. 13.]  In this letter Plaintiff demanded a copy of the "updated and corrected credit history" sent to Guilford on September 1, which presumably refers to the 1:03 Report, and again requested that Trans Union pay damages, including attorney's fees.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 59; Dkt. 55, Ex. 13.]  Plaintiff also disputed one of the items appearing on the credit report sent to him on January 10, 2010, a Macy's account, claiming that it was his father's credit obligation.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 60; Dkt. 55, Ex. 13.]

In response to Plaintiff's second letter, Trans Union again performed an investigation into Plaintiff's allegations, although the parties again dispute the quality of the investigation.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 61; Dkt. 5, Pl. 56(a)(2) Statement, ¶ 61.]  It is undisputed that Trans Union contacted Macy's and confirmed that the item challenged in Plaintiff's February letter did in fact belong

---

[7] Plaintiff disputes the correctness of this credit report.  [Dkt. 56, Pl. 56(a)(2) Statement, ¶ 58.]

to Plaintiff, and was not incorrectly on Plaintiff's credit report.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 64.]  On March 3, 2010, Trans Union responded to Plaintiff's February 2010 letter, informing Plaintiff that they had confirmed that the challenged Macy's account was in fact his, denying his request for compensation, and noting that they were sending Plaintiff a current copy of his credit report.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 6; Dkt. 55, Ex. 16.][8]

Trans Union extracted snapshots of Plaintiff's Trans Union credit file for August 2009, September 2009, and October 2009.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 69.]  Each of these three snapshots clearly indicates that it is a snapshot of Plaintiff's file, as each matches Plaintiff's full name, Ralph C. Neclerio, Jr., his birthdate, his Social Security Number, and three Connecticut addresses.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 69.]  None of those three snapshots includes the derogatory public record information Plaintiff alleges was contained in the 12:56 Report, and which was identified in the September 3 Letter.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 70.]

Plaintiff has suffered no economic damages.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 75.]  Plaintiff has not consulted with any mental health providers in connection with his non-economic damages claim for emotional distress damages.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 80.]  As explained in greater detail below, *infra* Part III.A.2, Plaintiff alleges that, among other things, he was embarrassed by the release of his father's information to his potential employer, and had to apologize to his potential employer after losing control of his

---

[8] Plaintiff does not bring any claims related to the Macy's account in this litigation.

emotions, and that he felt "powerless," "frustrated," and increased "pressure." [Dkt. 54 at 13; Dkt. 54, Ex. 10, Pl. Depo. Tr. at 176:1-25.]  In further support of his non-economic damages claim for emotional distress, Plaintiff offered a declaration from a Guilford employee indicating that plaintiff was upset and embarrassed by the release of his father's report.  [Dkt. 54, Ex. 19 at ¶ 18.]  As noted below, *infra* Section III.A.2, as of the time of his deposition, Plaintiff had authorized at least one subsequent employment background check following the one at issue in this litigation, and had not been notified of any issues with his credit report.  [Dkt. 65, Def. 56(a)(1) Statement, ¶ 6.][9]

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance*

---

[9] Plaintiff has neither admitted nor denied this statement.  However, Plaintiff admits to this in his own deposition testimony.  [Dkt. 65, Ex. B, Pl. Depo. Tr. at 179:7-22.]

*Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No.3:03-cv-00481, 2004 U.S. Dist. LEXIS 22112, at *4 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 726-27 (2d Cir. 2010).

## III.  DISCUSSION

"The FCRA creates a private right of action against credit reporting agencies for the negligent *. . .* or willful *. . .* violation of any duty imposed under the statute."  *Casella v. Equifax Credit Info. Servs., et al.*, 56 F.3d 469, 473 (2d Cir. 1995) (citations omitted).  "For any such violation, the credit reporting agency is liable to the consumer for 'actual damages' sustained, the costs of the action together with reasonable attorney's fees and, in the case of willful

noncompliance, punitive damages." *Casella*, 56 F.3d at 473 (citing 15 U.S.C. §§

1681n, 1681o).  Section 1681o provides for recovery for negligent noncompliance:

> a) In general.  Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> (1) any actual damages sustained by the consumer as a result of the failure; and
>
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
>
> (b) Attorney's fees.  On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681o.  "In order to survive a summary judgment motion on a claim of

negligent violation of the FCRA, a plaintiff must provide some evidence from

which a reasonable fact-finder could conclude that she suffered actual damages

as a result of the defendant's actions."  *Spector v. Experian Info. Servs.*, 321 F.

Supp. 2d 348, 356 (D. Conn. 2004).

Section 1681n provides for recovery in the instance of willful

noncompliance:

> (a) In general.  Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a

11

permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

*     *     *

(c) Attorney's fees.  Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n.

As noted above, Plaintiff alleges that Defendant violated, either willfully or negligently, sections 1681e(b), 1681i, and 1681g.  Section 1681e(b) provides the requirement that consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in a consumer's report.  15 U.S.C. § 1681e(b); *see also Gorman v. Experian Info Solutions, Inc.*, No. 07 CV 1846, 2008 U.S. Dist. LEXIS 94083, at *10 (S.D.N.Y. Nov. 19, 2008) (noting that section 1681e(b) "requires that consumer reporting agencies, such as [Trans Union], 'follow reasonable procedures to assure maximum possible accuracy of the information' contained in the consumer report" (quoting 15 U.S.C. § 1681e(b)).  Section 1681i requires consumer reporting agencies to "free of charge, conduct a reasonable reinvestigation" when a consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file."  15 U.S.C. § 1681i; *see also Gorman*, 2008 U.S. Dist. LEXIS 94083, at *10 (citing 15 U.S.C. § 1681i) ("When the accuracy of a report

is in dispute, Section 1681i outlines specific procedures that consumer reporting agencies must follow to ensure the proper reinvestigation of disputed information.").  Finally section 1681g allows a consumer to review the contents of their file by requiring a consumer reporting agency to "clearly and accurately disclose to the consumer", upon the consumer's request, "all information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1); *see also Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007) ("A primary purpose of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i.").

## A. Section 1681e(b)

Section 1681e(b) requires that "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  To recover on his section 1681e(b) claim, Plaintiff must show that: "(1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury."  *Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127, 134-35 (D. Conn. 2007) (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829

(E.D.N.Y. 1994)).  "Further, 'the threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary.'"  *Collins*, 494 F. Supp. 2d at 135 (quoting *Whelan*, 862 F. Supp. at 829)).

"Finally, even if the information is shown to be inaccurate, a plaintiff must still present some evidence that the consumer reporting agency failed to follow reasonable procedures in preparing the report in question."  *Collins*, 494 F. Supp. 2d at 135 (citing *Whelan*, 862 F. Supp. 2d at 829)).  "The standard for evaluating the reasonableness of an agency's procedures is what a reasonably prudent person would do under the circumstances."  *Ogbon v. Beneficial Credit Servs., Inc.*, 10 Civ. 3760, 2013 U.S. Dist. LEXIS 50816, at *21 (S.D.N.Y. Apr. 8, 2013) (quoting *Whelan*, 862 F. Supp. at 831).  "Whether or not the consumer reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.'"  *Gorman*, 2008 U.S. Dist. LEXIS 94083, at *13 (quoting *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)).  "However, '[t]o defeat a motion for summary judgment on a § 1681e(b) claim, a plaintiff must minimally present *some* evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report.'"  *Ogbon*, 2013 U.S. Dist. LEXIS 50816, at *22 (quoting *Whelan*, 862 F. Supp. at 831).

## 1. Inaccuracy

Plaintiff has presented no evidence of any inaccurate information appearing in his own credit report at any time relevant to this litigation. Although the 1:03 Report, which the Court assumes is Plaintiff's own report, is not in the record, Plaintiff does not allege that there were any inaccuracies in this report. Additionally, Plaintiff does not allege that there are any inaccuracies in the reports provided by Trans Union in response to the January 2010 and February 2010 letters sent to Trans Union by Plaintiff's attorney. Although Plaintiff's February 2010 letter disputed one account appearing on the report sent to Plaintiff in January 2010, Defendant then verified the accuracy of that account, and Plaintiff no longer disputes that account. Defendant sent Plaintiff another copy of his credit report in March 2010, following the verification of that account, and Plaintiff has not disputed the accuracy of any of the items on that report. The Court therefore finds that there is no question of material fact regarding the accuracy of the information in Plaintiff's own credit report at the times relevant to this litigation, and thus there is nothing in Plaintiff's own report that satisfies the threshold requirement of a § 1681e(b) claim. The Court reached this conclusion mindful of the fact that the 12:56 Report contained the Plaintiff's first and last names, generational suffix, and current address listed as a former address; however, the Court finds that the 12:56 Report was not the Plaintiff's credit report, as readily discerned by Guilford Bank, because it did not bear either his social security number or date of birth.

However, the disclosure of Plaintiff's father's report, and the alleged inaccuracies within that report, may call into question the accuracy of Plaintiff's

own report.  While a case of first impression in this circuit, courts in other circuits have held that a consumer may maintain a suit for improper disclosure of the credit report of a third party in response to a request for information concerning the consumer.  *See, e.g.*, *Haque v. Compusa, Inc.*, No. 02-10345, 2003 U.S. Dist. LEXIS 404, *6 (D. Mass. Jan. 13, 2003) (finding that "there is 'no logical reason why the mere fact that the harmful inaccuracy appeared in another individual's credit report should shield a credit reporting agency for harm to an individual flowing from a negligent violation of the [FCRA]." ) (quoting *Koropoulos v. The Credit Bureau, Inc.*, 734 F.2d 37, 47 (D.C. Cir. 1984)); *cf. Koropoulos*, 734 F.2d at 40, 47 ("Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports, . . .  We can see no logical reason why the mere fact that the harmful inaccuracy appeared in another individual's credit report should shield a credit reporting agency for harm to an individual flowing from a negligent violation of the Act.").

In *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001), the Plaintiff, Jerry Crabill, had no inaccuracies in his own report.  The *Crabill* plaintiff had a brother whose name, John Crabill, was very similar to Plaintiff's, and whose Social Security Number varied from the plaintiff's by only one digit.  Because of the similarity between the two men's identifying information, the defendant consumer reporting agency's computer was programmed to respond to a request for Jerry's report by producing Jerry's report, and also producing John's report unsolicited.  Jerry's report also included a notation reading "do not confuse with

brother John D. Crabill."  259 F.3d at 663.  The Seventh Circuit found that sending both brothers' reports simultaneously was "potentially misleading."  259 F.3d at 664.  The Seventh Circuit found that because of the possibility that both reports may refer to the same person, the defendant was entitled to provide both reports simultaneously.  259 F.3d at 664.  However, the Seventh Circuit also found that once the defendant consumer reporting agency had learned that they were in fact two separate people, it "might be viewed as a failure to maintain reasonable procedures for assuring accuracy" for defendant to continue sending both reports.  259 F.3d at 664.[10]  Similarly, in this case, assuming Plaintiff's father's report contains inaccurate information, the production of Plaintiff's father's report could be potentially misleading.

Additionally, courts in other circuits have allowed spouses to bring FCRA claims based on inaccuracies in the other spouse's credit reports, and the Court finds these cases to be instructive on this issue. [11]  For example, the court in

---

[10] The Seventh Circuit ultimately affirmed the district court's grant of summary judgment for failure to establish damages.  259 F.3d at 667.

[11] Although the Court also identified a few cases declining to grant standing to a spouse based on inaccuracies in the other spouse's credit report, none of those cases are binding on this Court and the Court believes these cases are largely distinguishable and otherwise unpersuasive. *See, e.g., Cain v. Trans Union LLC,* No. C04-1779L, 2006 U.S. Dist. LEXIS 25146, at *19-20 (W.D. Wash. Feb. 9, 2006) (denying standing for wife where the only inaccuracy was in her husband's report and finding that in order to have standing for an FCRA claim she must show that defendant credit reporting agency "prepared a credit report regarding her that contained an inaccuracy."); *Washington v. CSC Credit Servs.,* 194 F.R.D. 244, 252 (E.D. La. 2000) (granting summary judgment on plaintiff wife's FCRA claim based on husband's report because plaintiff wife did not show that the release of her husband's credit caused damage to her credit worthiness); *Wiggins v. Equifax Servs., Inc.,* 848 F. Supp. 213 (D.D.C. 1993) (dismissing plaintiff wife's claim arising from plaintiff husband's report because "no report was ever requested or issued for [plaintiff wife] individually or jointly and finding that "[o]nly persons to

*Roybal v. Equifax*, noting that "the FCRA is to be liberally construed," held that a wife had standing to bring claims under the FCRA based on erroneous adverse information appearing in her husband's credit report, where her husband's credit report contained information on an account held jointly between husband and wife.  No. 2:05-cv-01207, 2008 U.S. Dist. LEXIS 79789, at *15-17 (E.D. Cal. Oct. 9, 2008)(*citing Soghomonian v. United States*, 278 F. Supp. 2d 1151, 1167 (E.D. Cal. 2003) (vacated on other grounds)).  Because her husband's report contained information on an account that was jointly held by husband and wife, the report contained credit information that belonged to the wife and could reasonably have been expected to bear on her creditworthiness, she had standing to sue for the inaccuracies appearing elsewhere in her husband's report.  *Id.*  In *Soghomonian* the court determined that, even though the credit report at issue was the husband's, it was clear that It actually fell within the statutory definition of credit report as to both spouses, as it contained considerable information pertaining to the wife as well as the husband. 278 F. Supp. 2d at 1167-68.  In K*oropoulos v. The Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984), a husband and wife brought claims under the FCRA. The plaintiff wife claimed that she was denied credit based on adverse information contained in her husband's credit report, and that defendant consumer reporting agency wrongfully disclosed her husband's credit report to the potential creditor despite the fact that she had submitted an individual credit application for herself.  734 F.2d at 45-46.  The consumer reporting agency sought a dismissal of the wife's FCRA claim arguing that the

whom a credit report *relates* have standing to bring an action under this statute."(citation omitted)).

wife could not maintain an action because defendant had disclosed her husband's information and not hers. 734 F.2d at 46. The court reasoned that 15 U.S.C. § 1681b(a)(3)(A), while seeming to prohibit disclosure of one spouse's report to a prospective creditor of another spouse, permits disclosure of the report of the non-applying spouse where the information disclosed has a bearing on the applying spouse's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, such as where two people form an economic unit by virtue of their familial status of other union. 734 F.2d at 46. However, the court vacated the district court's grant of summary judgment in favor of the defendant consumer reporting agency, holding that the issues of whether the consumer reporting agency negligently issued a misleading or incomplete report and whether it negligently or willfully issued a report for an impermissible purpose prohibited by 15 U.S.C. § 1681b(a)(3)(A) were genuine issues of material fact precluding summary judgment. Notably, the *Koropoulos* court reasoned that a credit reporting agency should not be shielded from liability because a consumer was harmed by the negligent disclosure of a credit report of another person rather than their own credit report. 734 F.2d at 47. That argument resonates with this Court. Section 1681e(b) requires consumer reporting agencies to assure the accuracy of their reports and section 1681i(a)(1) permits consumers to correct inaccuracies in their reports. The inability of a consumer to address the repeated erroneous disclosure of credit information of another person, whether by issuing a so-called hybrid report or issuing the report

of a third person in response to a request for information about a consumer would negate the purpose of sections 1681(e)b, 1681i and 1861g.

While the Plaintiff does not expressly cite to section 1681b(a)(3)(A) as the basis for its suit, his factual allegations are sufficient to put the Defendant on notice that the provision of his father's report in response to a request for Plaintiff's report, particularly when his father's report incorrectly bears his generational suffix and address, despite his previous attempts to assure the severance of his father's credit history from his, is sufficient to support a claim under section 1681e(b) and the other sub-sections of 15 U.S.C. § 1681 on which plaintiff relies.

Plaintiff has introduced evidence sufficient to suggest that the 12:56 Report was his father's credit report.  Although the 12:56 Report included Plaintiff's generational suffix "Jr." and included Plaintiff's then-current address as a prior address, even though his father had never lived at that address, Guilford knew immediately that it was not his in part because it contained the social security number of another person.  It is undisputed that the 12:56 Report also contained several pieces of identifying information that did not match Plaintiff's identifying information, including a current address listing that matched Plaintiff's father's then-current address but did not match Plaintiff's then-current address, a date of birth that did not match Plaintiff's date of birth, and a Social Security Number that did not match Plaintiff's.  [Dkt. 45, Def. 56(a)(1) Statement, ¶ 44.]  Additionally, the Court will accept as true for the purposes of summary judgment Plaintiff's assertion that the 12:56 Report contained the six pieces of public record

information identified in the September 3 Letter.  [Dkt. 48 at 2.][12]  Plaintiff has
submitted a signed declaration from his father in which his father admits that the
six pieces of public records information belong to him, and although Defendant is
unwilling to admit or deny the appearance of this public records information on
the 12:56 Report, Defendant does not dispute Plaintiff's assertion that these six
pieces of public records information belonged to Plaintiff's father rather than
Plaintiff.  [Dkt. 57, Def. 56(a)(2) Statement at 5.]  The appearance of these public
records items attributable to Plaintiff's father in the 12:56 Report adds further
evidence that the 12:56 Report was in fact Plaintiff's father's report, rather than
his own or a hybrid report containing both Plaintiff's and his father's credit
information.  Plaintiff has also submitted a credit report regarding his father
prepared by Cogent Road Inc., a reseller of consumer reports that aggregates
data from three consumer reporting agencies, Defendant, Experian, and Equifax
(the "Cogent Road Report").  [Dkt. 54, Ex. 17.]  Although the data in the Cogent
Road Report is aggregated, the report indicates which reporting agency is the
source for the data relevant to this opinion.  This report is dated August 31, 2009,
the day before Guilford requested the reports at issue in this litigation.  However,
the report does not indicate when the data from Trans Union was collected.  The
report does show that on or before August 31, 2009, Trans Union reported the
name "RALPH C NECLERIO JR" for Plaintiff's father, and that Trans Union

---

[12] Plaintiff's Brief in Support of Plaintiff's Motion for Partial Summary Judgment is
not page numbered, so citations to a specific page refer to the numbering
assigned in the ECF heading.

reported two addresses for Plaintiff's father at which his father had never lived,[13] but at which Plaintiff had lived.[14]  This exhibit adds further evidence that it was in fact Plaintiff's father's report that contained inaccuracies, and the 12:56 Report was in fact his father's report.

The text of section 1681e(b) does not merely require Defendant to maintain "reasonable procedures" to produce accurate reports; rather, it requires Defendant to use "reasonable procedures" to assure "*maximum* possible accuracy."  15 U.S.C. § 1681e(b) (emphasis added).  In this instance, the sending of Plaintiff's father's report in response to a request for Plaintiff's report, while Plaintiff's father's report inaccurately contains some of Plaintiff's own identifying information, is not "maximum possible accuracy."  Plaintiff has presented sufficient evidence for a reasonable jury to find that he has satisfied the inaccuracy prong of a Section 1681e(b) claim both as to the content and the issuance of the 12:56 Report.

## 2. Damages

"To maintain a claim under the FCRA, Plaintiff bears the burden of demonstrating 'actual damages sustained" as a result of the Defendants' activities.'"  See *Caltabiano v. BSB Bank & Trust Co., et al.*, 387 F. Supp. 2d 135,

---

[13] Plaintiff's father states in his Declaration that he never lived at either the Lincoln Avenue Address or at the address located on Garvin Road in Hamden, Connecticut (the "Garvin Road Address").  [Dkt. 54, Ex. 9.]

[14] It is undisputed that Plaintiff's own report accurately included three Connecticut addresses at the relevant time: the Lincoln Avenue Address, the Stonewall Drive Address, and the Garvin Road Address. [Dkt. 45, Def. 56(a)(1) Statement, ¶¶ 70-72.]

142 (E.D.N.Y. 2005) (citing *Casella v. Equifax Credit Info. Servs., et al.*, 56 F.3d 469, 473 (2d Cir. 1995)).

Plaintiff has not suffered any economic damages from the disclosure of either the 12:56 Report or the 1:03 Report.  Plaintiff was in fact offered the job for which he applied when these credit reports were requested and sent to the potential employer.  Plaintiff's only claimed damages are emotional damages.  Plaintiff argues that he was embarrassed by the release of his father's information to his potential employer, and had to apologize to his potential employer after losing control of his emotions, and that he felt "powerless," "frustrated," and increased "pressure."  [Dkt. 54 at 13; Dkt. 54, Ex. 10, Pl. Depo. Tr. at 176:1-25.]  This is the only claim of distress for which there is any sort of corroboration, in the form of a single conclusory sentence in the declaration of Jennifer Dauster-Bevacqua, former Human Resources Manager of Guilford.  Ms. Dauster-Bevacqua states in her declaration that she "later spoke with Mr. Neclerio about the report" and that "[h]e was upset an [sic] embarrassed by the report."  [Dkt. 54, Ex. 19 at ¶ 18.]  Ms. Dauster-Bevacqua offers no further explanation of the context of her conversation with the Plaintiff.  Her statement is a conclusory characterization devoid of any factual content.  She does not state whether she reached that conclusion because the Plaintiff told her he was upset, in which case her statement would be inadmissible hearsay within admissible hearsay.

Plaintiff also asserts that his ability to seek future employment and credit has been "chilled," and that he feels worry each time he puts in a credit

application, because Plaintiff is uncertain whether "a report with similar errors" will be issued.  [Dkt. 54 at 13-14.]  However, Plaintiff does not provide any examples of instances where he could have applied for credit or employment but chose not to because of uncertainty about the issuance of a "report with similar errors."  On the contrary, Plaintiff's deposition testimony indicates that he did apply for and receive another position after Trans Union sent the erroneous report to Guilford. [Dkt. 65, Ex. B, Pl. Depo. Tr. at 183:13-24.]  Plaintiff also asserts that "repeated publication of the false information about him made him feel that he had no where [sic] to go to correct the error," Dkt. 54 at 13, meaning that he felt there was nothing he could do to assure that his father's bad credit information was not sent to his prospective employers and creditors.  Plaintiff also claims that his family has been embarrassed and unable to "move on" because the problem is "recurrent."  [Dkt. 54 at 13-14.]  Plaintiff further claims that he has lost trust in Trans Union, and his emotional damages have been compounded by Trans Union's refusal to acknowledge and correct the alleged error.  [Dkt. 54 at 14.]  Plaintiff also claims that the problems have had an "adverse effect" on his relationship with his parents.  [Dkt. 54 at 13.]  However, Plaintiff provides no detail on his relationship with his parents prior to the events relevant to this litigation and no explanation as to how his relationship with his parents has been affected by the events relevant to this litigation.  Nor does either of Plaintiff's parents offer a declaration corroborating the Plaintiff's assertion of estrangement from his parents.

"In order to support a claim for emotional distress damages, a plaintiff must demonstrate they suffered an 'actual injury.'" *Caltabiano*, 387 F. Supp. 2d at 142 (citing *Patrolmen's Benevolent Ass'n of the City of New York v. City of New York,* 310 F.3d 43, 55 (2d Cir. 2002)).  "To demonstrate an actual injury, a plaintiff generally cannot stand on his subjective testimony alone, but must set forth 'other evidence that such an injury occurred.'" *Caltabiano*, 387 F. Supp. 2d at 142 (citing *Patrolmen's Benevolent Ass'n of the City of New York*, 310 F.3d at 55)). Plaintiff must present "concrete evidence" of such distress. *Okocha v. HSBC Bank USA, N.A.*, No. 08 Civ. 8650, 2010 U.S. Dist. LEXIS 132152, at *19 (S.D.N.Y. Dec. 14, 2010).  Because Plaintiff has not established economic damages, his Section 1681 claims rest solely on his allegation of emotional damages.  *Cf. Caltabiano*, 387 F. Supp. 2d at 142.  However, Plaintiff has provided no evidence to support his claim of emotional damages beyond his own testimony.  Plaintiff did not seek any sort of mental health care related to the events at issue here, and has not offered the testimony of any physician, psychologist, or therapist. Nor has Plaintiff produced any medical records, or any other records of any kind, to support his claim of emotional damages.  Plaintiffs' own conclusory allegations of emotional distress are insufficient to support a claim of damages. *See Okocha v. HSBC Bank USA, N.A.*, NO. 08 Civ. 8650, 2010 U.S. Dist. LEXIS 132152, at *19-20 (S.D.N.Y. Dec. 14, 2010) (granting judgment as a matter of law on plaintiff's FCRA claims and finding among other things that plaintiff's "own conclusory allegations are insufficient" evidence of emotional distress, even where plaintiff's personal friend had testified to plaintiff's purported emotional

distress).  As the Second Circuit wrote in *Patrolmen's Benevolent Association of the City of New York v. City of New York*:

> "[A] plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, *see Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993), or the objective circumstances of the violation itself. *See id.; Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir.1995). Evidence that a plaintiff has sought medical treatment for the emotional injury, while helpful, *see, e.g., Carrero v. New York City Hous. Auth.,* 890 F.2d 569, 581 (2d Cir.1989), is not required. *Miner,* 999 F.2d at 663."

310 F.3d at 55.  By way of example, the Second Circuit affirmed a denial of summary judgment and subsequent judgment following a jury verdict where the plaintiff, who sustained a puncture wound from a discarded hypodermic needle as a result of the defendant's negligence, had offered sufficient evidence to support his emotional distress claim that he had a fear of developing acquired immune deficiency syndrome (AIDS).  *Marchica v. Long Island R.R. Co.*, 31 F.3d 1197 (2d Cir. 1994).  In *Marchica*, the plaintiff introduced medical and eye witness evidence that he developed post -traumatic stress disorder soon after he suffered the wound, evidence that his co-workers and spouse observed the physical manifestations such as crying and vomiting, evidence that he sought psychological treatment and was prescribed anti-depressants, and expert testimony that he would continue suffering the disorder and accompanying symptoms of weight loss, vomiting, rashes, and tachycardia for rest of his life.  31 F.3d at 1207-08.  Plaintiff falls well short of offering such evidence in this case.

Because Plaintiff has not produced any evidence of emotional damages beyond his own conclusory deposition testimony and, even assuming it is not hearsay, a single conclusory sentence in the declaration of the former Human

Resources Manager of Guilford, Plaintiff has failed to offer sufficient evidence to support his claim for emotional damages.  *See Caltabiano*, 387 F. Supp. 2d at 142 (dismissing plaintiff's claim for emotional damages where plaintiff's only evidence consisted of his own testimony and the potential testimony that could be offered at trial by a physician that plaintiff began seeing only after commencing litigation).

<u>(a) Causation</u>

If Plaintiff were to have presented sufficient evidence of emotional damages, which he has not, he would be found to have satisfied the causation requirement, as Guilford's receipt of his father's report, inaccurately containing certain of Plaintiff's identifying information, is sufficient to show causation here. At least one court in this district has raised the possibility that a plaintiff may recover for emotional damages in the absence of a denial of credit where there is evidence that the creditor was at least aware of the potentially damaging information.  *See Spector v. Trans Union, LLC ("Spector I"),* 301 F. Supp. 2d 231, 237 (D. Conn. 2004); *see also Fashakin v. Nextel Commc'ns, et al.*, No. 05-CV-3080, 2009 U.S. Dist. LEXIS 25140, at *43-44 (E.D.N.Y. Mar. 25, 2009) (citing *Spector I*).  However, this Court need not address the issue because Plaintiff has failed to establish any actual damages wither economic or non-economic.).

<u>3. Reasonableness of Procedures</u>

Plaintiff has also presented sufficient evidence to support his claim that Trans Union failed to implement and follow reasonable procedures to assure the maximum accuracy of its reporting of his credit.  The fact that Guilford could so

readily discover that the first report was sent in error and that it needed to include more identifying information, in particular, the Plaintiff's social security number, to assure its receipt of the correct report, illustrates the simple procedure Trans Union could have adopted and implemented to assure the accuracy of the information supplied in response to a request for the Plaintiff's credit report.

Plaintiff makes much of the fact that he has twice sued Trans Union, in Connecticut state court in 1998, and in this court in 2002, "over this same issue." [Dkt. 54 at 6-7.]  Although he doesn't say so explicitly, Plaintiff is apparently arguing that the past litigation should have put Trans Union on notice of potential problems with his and his father's files.  In his declaration, Plaintiff states that he sued Trans Union in 1998 "over its refusal to stop including information about my father in credit reports about me," and again in 2002 because "Trans Union did not stop including information about my father in credit reports about me."  [Dkt. 54, Ex. 8, Decl. of Ralph C. Neclerio, Jr. at ¶¶ 9-10.]  It appears that the 2002 lawsuit ended with a settlement, though the record does not contain the terms of that settlement agreement.  Plaintiff merely asserts that "[a]t the conclusion of the second lawsuit, Trans Union assured Mr. Neclerio that it would keep information about his father separated from his own."  [Dkt. 54 at 7.]  This purported agreement viewed in the light most favorable to the Plaintiff indicates Trans Union's knowledge of the imperative of not confusing the Plaintiff and his father in reporting on the credit of either.  Thus, the inclusion of Plaintiff's generational marker and his address, at which his father never lived, in his father's credit report, and sending what appears to have been his father's credit

report to Guilford in response to a request aimed at Plaintiff's credit history, Trans Union failed to use "reasonable procedures" to report accurately the credit history of both the Plaintiff and his father.

In support of his opposition to Defendant's motion for summary judgment, Plaintiff attached an excerpt from the transcript of a deposition of Steve Reger, taken in another case, *Jung v. Trans Union, LLC, et al.*, No. 2:07-cv-02514 (E.D. Pa.).  [Dkt. 54, Ex. 6.][15]  Mr. Reger was also deposed in this litigation, apparently as a 30(b)(6) witness for Defendant.  At the time Mr. Reger testified in his *Jung* deposition Trans Union apparently had a policy that would have allowed it to place a "do-not-merge" instruction on a father's file in response to a request from a "Jr." son.  When asked "[i]n what circumstances does the do-not-merge get used at TransUnion before there is ever a customer dispute?", to which Mr. Reger replied: "one circumstance might be is if we have a junior-senior scenario, and junior is the one contacting TransUnion, but we may also add a do-not-merge statement to the senior's file even though we've never spoken with senior."  [Dkt. 54, Ex. 6, Reger-*Jung* Depo. Tr. at 90:10-16.]  Mr. Reger further testified that "[i]t could also be where TransUnion is told that, I don't know, there was another person with a very similar name that lives on their same street or something.  And so if a consumer is advising us up front, we might proactively take the steps to add a do-not-merge."  [Dkt. 54, Ex. 6, Reger-*Jung* Depo. Tr. at 90:17-22.]  The fact that Defendant has reportedly taken "proactive" steps in the past, combined with the fact that Defendant arguably should have been on notice of this issue due to

---

[15] Defendant has objected to Plaintiff's reliance on this testimony. [Dkt. 65 at 4 n.3.]

Plaintiff's prior legal action, raises a genuine question of material fact as to the reasonableness of Defendant's procedures used in generating the reports at issue in this case.

Plaintiff has offered sufficient evidence from which a reasonable jury could find, first, that the 12:56 Report issued to Guilford was issued in error, as it was not his report; second, that Trans Union should have adopted protocols, in light of its past errors and Plaintiff's efforts to correct those errors; and third that Trans Union could have, but did not, adopt a simple protocol of requesting more identifying information from requestors, or of adding a "do-not-merge" or other control to both files, to avert future errors.

## B. Section 1681i

Section 1681i directs that "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . ." 15 U.S.C. § 1681i(a)(1)(A).  In other words, "[s]ection 1681i(a) provides in relevant part that when a consumer disputes the completeness or accuracy of an item on his credit report, and 'directly conveys' that dispute to the consumer reporting agency, the agency 'shall within a reasonable period of time reinvestigate and record the current status of that information,' and, if the 'information is found to be inaccurate or can no longer be verified, . . . promptly delete such information.'"

*Podell v. Citicorp Diners Club, Inc., et al.*, 112 F.3d 98, 101 (2d Cir. 1997) (quoting 15 U.S.C. § 1681i(a)).

"A plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate in order to prevail on allegations that a consumer reporting agency had failed to reasonably reinvestigate a disputed item." *Fashakin v. Nextel Commc'ns., et al.*, No. 05-CV-3080, 2009 U.S. Dist. LEXIS 25140, at *40 (E.D.N.Y. Mar. 25, 2009) (citing *Deandrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)). "This rule is based on both the purpose of the FCRA, 'to protect consumers against the compilation and dissemination of *inaccurate* credit information,' and the fact that 'it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing[] that the disputed information disclosed by the credit agency was, in fact, inaccurate.'" *Fashakin*, 2009 U.S. Dist. LEXIS 25140, at *40-41 (internal citation omitted) (quoting *Deandrade*, 523 F.3d at 67).

As discussed above in Part III.A.1, there is no individual piece of inaccurate information in Plaintiff's own file or report.  Rather, this Court finds that Trans Union's production of Plaintiff's father's report inaccurately containing some of Plaintiff's own information could mislead recipients of Plaintiff's report, thereby establishing the inaccuracy required to bring a claim under section 1681e(b). However, this Court does not find that section 1681i provides Plaintiff any relief for such a scenario.  The text of section 1681i(a)(1)(A) appears to only allow Plaintiff to challenge particular pieces of information within his own report, as it says that "if the completeness or accuracy of *any item of information* contained

31

in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether *the disputed information* is inaccurate and record the current status of *the disputed information*, or delete *the item* from the file . . . "  15 U.S.C. § 1681i(a)(1)(A) (emphasis added).  The text of section 1681i does not appear to give Plaintiff the tools to require a reinvestigation of the particular inaccuracy at issue here.

The Court recognizes that a consumer can be injured by the erroneous issuance of the credit report of another person.  However, section 1681i does not authorize a consumer to direct the completeness or accuracy of information contained in the credit file of another consumer.  Thus, this is a lacuna which must be filled by congressional rather than judicial action.

Additionally, it is undisputed that Defendant investigated the one item on Plaintiff's credit report specifically challenged in Plaintiff's February 18, 2010 letter, and verified that it was in fact Plaintiff's within the 30 day time period mandated by the section 1681(a)(1)(A).  The Court notes Plaintiff's letters to Trans Union following the relevant events did not ask Trans Union to reinvestigate his father's file, [Dkt. 54, Exs. 11, 13.], and the letters did not arguably impose a duty on Trans Union to investigate potential inaccuracies in his father's file.  *See Casella v. Equifax Credit Info. Servs., et al.*, 56 F.3d 469, 474 (2d Cir. 1995) ("Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information."). The Court notes that one of Plaintiff's

arguments appears to be that the 12:56 Report was a report "concerning the Plaintiff" because the name matched his own.  [Dkt. 54 at 27-28.]    Even assuming that Plaintiff asked Trans Union to reinvestigate his father's file, this is a matter of semantics, as it is apparent that what Plaintiff sought was Trans Union's investigation of the facts surrounding its issuance of the wrong credit report to Guilford purporting to be his credit report.  The Court does not find that that section 1681i requires a reinvestigation in such circumstances.  Therefore, Plaintiff's § 1681i claim must be dismissed.

## C. Section 1681g and 1681i(a)(6)(B)(ii)

Section 1681g requires a consumer reporting agency to "upon request, and subject to [section 1681h(a)(1)], clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request, . . . ." 15 U.S.C. § 1681g(a).  On its face, section 1681g(a) does not give Plaintiff a right to receive information from a third party's file, as it requires only that a consumer reporting agency "disclose to *the consumer* . . . all information in *the consumer's file.*"  15 U.S.C. § 1681g(a)(1)(emphasis added).

The Plaintiff alleges that Defendant violated section 1681g, and section 1681i(a)(6)(B)(ii) by failing to include the public records information allegedly included in the 12:56 Report in subsequent credit reports issued to Plaintiff. Plaintiff's section 1681g claim is based on an expanded definition of the word "file" as used in section 1681g, which is derived from Federal Trade Commission ("FTC") commentary that has been adopted by courts in other circuits but has not yet been adopted by this Circuit.  Plaintiff contends that the definition of "file" as

used in section 1681g requires Defendant to disclose, in any report issued to

Plaintiff pursuant to section 1681g, "all information on the consumer that is

recorded and retained by a consumer reporting agency that might be furnished,

or has been furnished, in a consumer report on that consumer."  *Gillespie v.*

*Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (quoting 16 C.F.R. pt. 600,

app. § 603); *see also Cortez v. Trans Union*, 617 F.3d 688, 711-12 (3d Cir. 2010)

("Congress clearly intended the protections of the FCRA to apply to all

information furnished or that might be furnished in a consumer report.");

*Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007) ("We have

recently held that "file" means the information contained in the consumer report

produced by the consumer reporting agency.").  In further support of his

argument regarding the definition of "file", Plaintiff cites to a comment letter

Defendant sent to the FTC in 2004, in which Defendant stated that under Section

1681g(a)(1), "[e]very consumer reporting agency is required to disclose 'all

information' the consumer reporting agency has in its files related to a consumer

whenever that consumer requests his or her file."  [Dkt. 54, Ex. 18 (emphasis

added).]  The FCRA itself explicitly defines "file" as: "all of the information on that

consumer recorded and retained by a consumer reporting agency regardless of

how the information is stored."  15 U.S.C. § 1681a(g).  Although none of the

authorities relied upon by Plaintiff in support of his proposed definition of the

word "file" are binding on this Court, the Court will assume Plaintiff's proposed

definition of "file" for the purposes of this Order.

Plaintiff himself acknowledges that the information within his own file is on its own not inaccurate, and that the only information that is inaccurate standing alone is in his father's file. [*See* Dkt. 54, Pl. Opp. at 22-23 ("Inaccurate information in the file of Mr. Neclerio's father has caused Trans Union to falsely identify the father with Mr. Neclerio's home address. . . . Under these circumstances, where Trans Union maintains information about Mr. Neclerio in the file of his father, . . .")]. Further evidence that the problem is inaccurate information in Plaintiff's father's file is offered by the Cogent Road Report, which as noted above, was prepared regarding Plaintiff's father on August 31, 2009. [Dkt. 54, Ex. 17.][16] This report, prepared the day before the reports at issue in this litigation, indicates that Trans Union's report on Plaintiff's father included the name "RALPH C NECLERIO JR" and also included Plaintiff's address, at which Plaintiff's father apparently never lived. [Dkt. 54, Ex. 17; Dkt. 54, Ex. 9.] The evidence indicates that Plaintiff's father's file at Trans Union contained the generational suffix "Jr." and Plaintiff's address when the 12:56 Report was issued, and Plaintiff has introduced no evidence that otherwise suggests that the 12:56 Report was his own report rather than his father's. As noted above, to the extent that Plaintiff also argues that the 12:56 Report can be considered a report issued about Plaintiff simply because the name on the report matches Plaintiff's name and the previous address noted on the report include the address at which Plaintiff currently resides, Plaintiff provides no authority to support such a claim. Further

---

[16] Although it is not clear from the face of the Cogent Road Report when exactly Cogent Road received the Trans Union data that it used in preparing the report attached to Plaintiff's opposition, that date is not important here.

the only portions of the 12:56 Report which Plaintiff alleges to have pertained to him are the generational suffix and an address.  Thus where the overwhelming majority of the information contained in the credit report is that of another person, the Plaintiff cannot credibly allege that it is his report and that he is therefore entitled to the confidential credit information of another person.

Although the Court finds that Plaintiff has provided evidence sufficient to move forward with his section 1681e(b) claim, including evidence satisfying the threshold inaccuracy requirement, the Court does not find that section 1681g requires Defendant to disclose the 12:56 Report or any of the information from the 12:56 Report to the Plaintiff in a request made under section 1681g.  The text of section 1681g does not appear to contemplate the production of a third party's information to a requesting consumer.  Further, the Court recognizes that requiring Defendant to include any and all erroneously-produced information in a 1681g report could be unworkable, and could possibly have the effect of actually increasing the risk of error in maintenance of credit files and the creation of credit reports.  "By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy."  *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (2d Cir. 1987).  Section 1681b of the FCRA explicitly lists the permissible purposes and circumstances under which an individual's credit report may be furnished to a third-party or otherwise used.  Section 1681e(a) requires that consumer reporting agencies "maintain reasonable procedures . . . to limit the furnishing of consumer reports to the purposes listed under [section 1681b]."  15 U.S.C. § 1681e(a).  In fact, Trans Union is explicitly prohibited from furnishing a

36

report where it has "reasonable grounds for believing that the consumer report will not be used for a purpose listed in [section 1681b]."  15 U.S.C. § 1681e(a). Plaintiff admits that the public records information Plaintiff argues should be included in his report is not his own information.  Without authority under section 1681b to disclose Plaintiff's father's information to Plaintiff in a section 1681g report, Trans Union is in fact barred from doing so.

Further, section 1681g(a) states expressly that the release of information to a consumer is subject to Section 1681h(a)(1), which requires that "as a condition of making the disclosures required under [Section 1681g], that the consumer furnish proper identification."  15 U.S.C. § 1681h(a)(1); *cf. Ogbon v. Beneficial Credit Servs., Inc.*, 10 Civ. 3760, 2013 U.S. Dist. LEXIS 50816, at *31 (S.D.N.Y. Apr. 8, 2013) (finding that "a condition precedent to  the consumer reporting agency's making such a disclosure is that 'the consumer furnish proper identification.'") (quoting § 1681h(a)(1)).  By requiring a requesting consumer to present "proper identification" it appears that Congress did not intend for section 1681g to allow a consumer to request the disclosure of information that is not their own under section 1681g.

Additionally, the authorities cited by Plaintiff to support his argument regarding the definition of the term "file" add further weight to the conclusion that section 1681g does not provide Plaintiff with a right to receive information from a third party's file.  The FTC commentary cited in those cases, and relied upon by Plaintiff, clearly applies to "information *on the consumer* . . . in a consumer report *on that consumer.*"  *Gillespie v. Trans Union Corp.*, 482 F.3d 907,

37

——

909 (7th Cir. 2007) (emphasis added) (quoting 16 C.F.R. pt. 600, app. § 603).

Defendant's FTC commentary letter stated that a consumer reporting agency

must disclose "all information . . . whenever *that consumer* requests his or her

file."  [Dkt. 54, Ex. 18 (emphasis added).]  None of these authorities grants

Plaintiff leave to demand that a third party's information be included in reports he

received under section 1681g.  Further, in none of the cases cited by Plaintiff

does the court require that a consumer reporting agency disclose information

from a third-party's file to a requesting consumer.  Although the Court believes

that Trans Union should have admitted to the Plaintiff that it erroneously included

his generational suffix and his address in the report of his father in this case,

there is no statutory authority requiring Trans Union to do so, and this Court will

thus not require such admission.

Plaintiff argues that his section 1681g claim is supported by the deposition

testimony of Trans Union investigator Marianne Litwa.  Plaintiff claims that Ms.

Litwa "acknowledged" that Trans Union had failed to comply with the FCRA by

not disclosing to Plaintiff the public records data found in the September 3 Letter.

[Dkt. 48 at 5.]  However, this evidence does not help Plaintiff defeat the summary

judgment motion.  Even if Ms. Litwa's testimony was based on the belief that

section 1681g required that the public records data included in the September 3

Letter must be disclosed to Plaintiff, Ms. Litwa's subjective belief or legal

interpretation of 1681g is not dispositive of the meaning of 1681g.  Plaintiff has

failed to cite any authority, and the Court knows of no authority, authorizing

Plaintiff, as a matter of law, to bring a claim under section 1681g for the failure to

disclose the information did not appear on Plaintiff's own credit report, nor in Plaintiff's own file.

Plaintiff's motion for summary judgment on his section 1681g(a) claim also asks the Court to find that Plaintiff has violated section 1681i(a)(6)(B)(ii).  Section 1681i(a)(6)(B)(ii) requires that consumer reporting agencies who perform a reinvestigation under section 1681i(a)(1) provide within five days after the completion of a written report "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation."  15 U.S.C. § 1681i(a)(6)(B)(ii).  Plaintiff has not provided sufficient facts to support a claim under section 1681i(a)(6)(B)(ii).  It is undisputed that Defendant sent Plaintiff a consumer report based on Plaintiff's file after each of Plaintiff's two inquiry letters.  Plaintiff has not alleged that these reports were provided in an untimely manner, and the Court sees in the record no evidence that these reports were untimely.  Plaintiff appears to be arguing that Defendant violated section 1681i(a)(6)(B)(ii) for the same reason that Plaintiff alleges Defendant violated section 1681g – the alleged failure to include the public records information found in the 12:56 Report in Plaintiff's credit report.  However, just as Plaintiff cites no authority by which Defendant is required to produce a third party's information to Plaintiff under section 1681g, Plaintiff also cites no authority by which Defendant is required to produce a third party's information to Plaintiff under section 1681i(a)(6)(B)(ii).  For the above reasons, the Court grants summary judgment in favor of Defendant on Plaintiff's claims under section 1681g and section 1681i(a)(6)(B)(ii).

Finally, the Court notes that Defendant argues that Plaintiff abandoned his section 1681g claim when he failed to note that claim in response to an interrogatory that asked Plaintiff to "[i]dentify each section and subsection of 15 U.S.C. § 1681, et seq., or other law that you allege Trans Union . . . violated in this matter . . . ." [Dkt. 65, Ex. B.]  One of Defendant's arguments in support of its motion for summary judgment as to Plaintiff's claims was that Plaintiff had abandoned his section 1681g claim.  [Dkt. 46 at 12-13.]  However, Plaintiff argues that the omission was inadvertent, [Dkt. 67 at 1], which assertion is supported by the fact that Plaintiff filed a motion for partial summary judgment seeking summary judgment only on his section 1681g claim.  After Defendant's motion for summary judgment was filed, Plaintiff served on Defendant an amended response to the interrogatory at issue, which added the section 1681g claim to Plaintiff's original response.  Defendant then filed a motion to strike that supplemental response.  [Dkt. 61.]  Defendant asserts that it has been prejudiced by the omission; however, Defendant does not explain how it has been prejudiced. Regardless, the Court need not consider the merits of the motion, as the motion to strike is mooted by the Court's grant of summary judgment to Defendants on other grounds.  Additionally, as trial was not imminent when Defendant's motion was filed, and a continuance to conduct limited additional discovery on the issue would have been possible, the Defendant failed to show prejudice and therefore the motion is denied.  *Cf. In re Omeprazole Patent Litig.*, MDL Docket No. 1291, 2004 U.S. Dist. LEXIS 10058, at *7-9 (S.D.N.Y. June 2, 2004) (granting defendant's

motion to amend responses to requests for admissions where plaintiff failed to show prejudice sufficient to warrant denial of motion to amend).

## E. Punitive Damages

As noted above, Plaintiff has failed to offer sufficient evidence to establish any actual damages in this case.  Plaintiff also seeks punitive damages, to which he may be entitled even if he cannot show that he has sustained any "actual damages."  *Casella*, 56 F.3d at 476 (citations omitted); *see also Boothe v. TRW Credit Data, et al.*, 557 F. Supp. 66, 71-72 (S.D.N.Y. 1982) (awarding punitive damages under section 1681n where plaintiff had not proven or alleged actual damages but where the court found that the defendant had willfully violated the FCRA).  Plaintiff must show willful noncompliance with the statute in order to recover punitive damages.  *Casella*, 56 F.3d at 476.  "Specifically, 'a plaintiff must show that a defendant knowingly and intentionally [violated the FCRA] in conscious disregard for [that plaintiff's] rights.'"  *George v. Equifax Mortg. Servs.*, No. 06-CV-971, 2010 U.S. Dist. LEXIS 106235, at *7 (E.D.N.Y. Oct. 5, 2010) (modification in original) (quoting *Northrop v. Hoffman of Simsbury, Inc.*, 12 Fed. Appx. 44, 50 (2d Cir. 2001)).  "This typically occurs in cases where credit reporting agencies 'intentionally misled consumers or concealed information from them.'"  *George,* 2010 U.S. Dist. LEXIS 106235, at *7 (quoting *Reed v. Experian Info. Solutions, Inc., et al.*, 321 F. Supp. 2d 1109, 1116 (D. Minn. 2008)).

Plaintiff is correct that the Supreme Court has held that section 1681n(a)'s requirement of willfulness can be satisfied by evidence of reckless disregard for statutory duties.  *See Safeco Ins. Co. of Am., et al. v. Burr, et al.*, 551 U.S. 47, 56-

57 (2007).  The Supreme Court provided guidance on the definition of reckless disregard as used in the FCRA, holding that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Safeco Ins. Co. of Am.*, 551 U.S. at 69.  In *Safeco*, the Court found that defendant's reading of the statute was not objectively unreasonable, in part because the defendant's reading had a "foundation in the statutory text" and there had not yet been any authoritative guidance on the issue from the courts of appeals or the Federal Trade Commission.  *Safeco Ins. Co. of Am.*, 551 U.S. at 69-70.

Plaintiff's willfulness argument appears to be that Defendant failed to adopt adequate procedures to assure that his credit history and that of his father would be sufficiently separated so that the credit information of one would not continue to be sent to persons seeking credit information about the other. Specifically, Plaintiff claims Trans Union recklessly disregarded the alleged inaccurate addition of Plaintiff's own identifying information to Plaintiff's father's file, and recklessly disregarded the potential that a third-party could enter insufficient personal identifying information when requesting a report, such that Plaintiff's father's report would be returned rather than Plaintiff's.  [Dkt. 54 at 33-38.]

Plaintiff has provided sufficient evidence to defeat summary judgment on his claim for punitive damages.  First, as noted above, Plaintiff has provided sufficient evidence to allow his section 1681e(b) claim to go to a jury.  Secondly,

Trans Union's repeated failure to issue accurate credit reports for the Plaintiff may be sufficient for a reasonable jury to find that it recklessly disregarded its statutory duty to issue accurate credit reports, evincing Trans Union's failure to implement reasonable and customary measures to avoid issuing an erroneous credit report a third time, such as flagging the Plaintiff's file to require a date of birth or a social security number before issuing a credit report for him. Lastly, Plaintiff has provided sufficient evidence to raise a material question of fact as to whether it was objectively unreasonable for Trans Union to read section 1681e(b) as applying only to the account of the particular consumer invoking the statute. This is not a case where there has been no guidance on the issue, as was the case in *Safeco*, 551 U.S. at 70.  As noted above, there is precedent, including from courts of appeals, for allowing a plaintiff standing both for inaccuracies appearing in a third person's credit report and for a method of report production that can make an otherwise accurate report misleading.  Plaintiff may therefore maintain his claim for punitive damages for the alleged violation of section 1681e(b).  Because Plaintiff has failed to show noncompliance with sections 1681i and 1681g, and the Court will dismiss those claims, Plaintiff may not seek punitive damages for violations of those sections.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for partial summary judgment as to his section 1681g and 1681i(a)(6)(B)(ii) claim is DENIED, Defendant's motion for summary judgment is DENIED as to Plaintiff's section 1681e(b) claim only and

GRANTED as to Plaintiff's remaining claims, and Defendant's Motion to Strike Plaintiff's Supplemental Interrogatory Response is DENIED.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 15, 2013